UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

BRENT TAYLOR,

        Plaintiff,

        v.                          CAUSE NO. 1:20-CV-477-WCL-SLC

COUNTY OF ALLEN, et al.,

        Defendants.

<u>OPINION AND ORDER</u>

Brent Taylor, a prisoner without a lawyer, filed a complaint under 42 U.S.C.

§ 1983 and state law against Allen County, the Allen County Health Department, the

Allen County Board of Commissioners, Allen County Sheriff David J. Gladieux, and the

Fort-Wayne-Allen County Board of Public Health about the conditions at the Allen

County Jail. ECF 35. "A document filed *pro se* is to be liberally construed, and a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A,

the court must review the merits of a prisoner complaint and dismiss it if the action is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief.

Taylor's lengthy complaint can be divided into three sections: (1) § 1983 claims

based on the conditions in his initial holding cell; (2) § 1983 claims based on the

conditions in the protective custody units; and (3) state-law tort claims. Each will be discussed in turn.

## A. Initial Holding Cell

Taylor alleges that when he was booked into the Allen County Jail, he spent three days in a feces-encrusted cell that he was unable to clean. ECF 35 at 10. Assuming this states a constitutional violation, Taylor does not name a viable defendant. The only individual defendant Taylor named is Sheriff Gladieux. But in order for a defendant to be held individually liable under § 1983, that defendant must have "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). The complaint contains no indication that Gladieux was aware of the conditions in the holding cell. Taylor alleges that he "asked several correctional officers for cleaning supplies" and he used the intercom in his cell to ask "central command for cleaning supplies." ECF 35 at 9-10. None of this provides a basis to infer that Gladieux was personally involved in the conditions of the cell or in the denial of cleaning supplies. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Therefore, the complaint does not state a claim against Gladieux in his individual capacity for the condition of the holding cell.

Nor does the complaint plausibly allege an official-capacity claim against any of the defendants based on the condition of the holding cell. An official-capacity claim

requires a plaintiff to allege the injury was caused by an unconstitutional policy or practice attributable to a governmental entity or policymaker. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). Nothing suggests the condition of the cell or denial of cleaning supplies was due to a policy or practice, but rather due to individual jail employees not doing their jobs.

### B. Protective Custody Units

Taylor next proceeds to detail deficiencies in two protective custody units he lived in—L-Block and M-Block. In L-Block, he complains about overcrowding, a sometimes-nonfunctioning toilet in his cell, periodic water shut-downs, and generally unclean living conditions. ECF 35 at 10-11. He contends that overcrowding caused him to sleep on the floor, where he was constantly exposed to water leaking from the toilet while he slept. *Id.* at 10. He says the toilet in his cell was not usable for weeks, which meant he and his cellmates either had to wait for the one hour a day that they were let out to use the toilet in the day room or use the toilet in the cell and leave the waste sitting there. *Id.* at 11. Taylor further complains that the vents in his cell were clogged with dirt and grime, restricting the air flow. *Id.* at 12.

Taylor goes on to allege that the living area in L-Block is not regularly cleaned. ECF 35 at 11. In contrast to general population, where certain inmates are designated as trustees and tasked with cleaning the living area, no jail trustees or other staff members are assigned to clean the living areas in protective custody. *Id.* As a result, the toilet in the day room was covered in urine and feces, and the rest of the area was filthy. *Id.*

Taylor alleges that adequate cleaning supplies were not provided, and the dirty condition caused skin irritation and rashes. *Id.* at 12-13.

When Taylor moved to M-Block, the problems with the clogged vents, the nonfunctioning toilet in his cell, and the dirty conditions persisted. ECF 35 at 13. Between May and October 2020, there were insects in his cell, and he suffered severe bite marks all over his body. *Id.*

Because Taylor was a pretrial detainee, his claims must be assessed under the Fourteenth Amendment. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Inmates are held in conditions that amount to punishment when they are not provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). Beyond this, a pretrial detainee must also plausibly allege a defendant's "response was objectively unreasonable under the circumstances" and that the defendant "acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 26-27 (7th Cir. 2021). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

Taylor does not plausibly allege an individual-capacity claim against Sheriff Gladieux for the conditions in the protective custody units because there is no basis to infer Gladieux was personally involved in the alleged violation. Nowhere does the complaint allege that he was aware of the conditions. Taylor contends that Gladieux had personal knowledge of the conditions through the tort claims notice he filed, ECF 35 at 17, through "several complaint forms sent to high ranking jail officials such as Lt. Vachon and Jail Commander Cpt. Butler," ECF 34 at 4, and by virtue of his position in the jail, *id*. These allegations are insufficient to allow an inference that Gladieux ever received those complaints or otherwise had personal knowledge of the conditions.

The complaint, however, does state an official-capacity claim against Sheriff Gladieux. An official capacity claim requires a plaintiff to allege the constitutional violation was caused by a policy or practice attributable to the Sheriff's Department. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). There are several ways in which a plaintiff may prove *Monell* liability:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made by those whose edicts or acts may fairly be said to represent official policy. . . . Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (quotation marks, citations, and internal alterations omitted). Taylor alleges that there is no system for cleaning the protective custody units, unlike in the general population where inmate trustees are assigned to clean the living areas. As a result of the lack of an established

cleaning procedure, the cells and the living areas fell below a minimal level of cleanliness, causing him skin rashes and irritation. Given that there is a cleaning policy for the general population, it is reasonable to infer that the lack of a similar policy in the protective custody units was a conscious decision on the part of the Sheriff. Taylor may proceed against Gladieux on this claim.

However, Taylor does not state a claim under § 1983 against the remaining defendants. He has not identified a practice or policy attributable to any of them that contributed to the conditions in the protective custody units.

Legally, Allen County and the Allen County Board of Commissioners are treated as the same entity. *See Schon v. Frantz*, 156 N.E.3d 692, 700 (Ind. Ct. App. 2020) ("[I]n legal contemplation, the board of commissioners is the county. . .. As such, Allen County is its Commissioners." (quotation marks omitted)). Neither entity can be charged with responsibility for any policy causing the injuries here. Under Indiana law, a county jail is under the supervision of the county sheriff; the responsibility of administering and operating the jail is placed solely on the sheriff; and the sheriff is responsible for the care of the prisoners confined there. IND. CODE § 36-2-13-5(a)(7); *Weatherholt v. Spencer Cnty.*, 639 N.E.2d 354, 356-57 (Ind. Ct. App. 1994).

> [T]he statutory duties of a county and a sheriff, respectively, are set forth as follows: 'The executive shall establish and maintain a . . . county jail . . ..' IND. CODE § 36-2-24. 'The sheriff shall . . . take care of the county jail and the prisoners there.' IND. CODE § 36-2-13-5(a)(7). We concluded that a county's duty to 'maintain' its jail is a duty to keep the jail open for use and in good repair. *Weatherholt*, 639, N.E.2d at 356. The statute does not impose a duty upon a county to administer its jail. Rather, it is the sheriff who is charged with a statutory duty to administer the jail in a manner which preserves the safety of inmates. *Id.* Thus, we held that once the county establishes and then reasonably maintains the jail, it is not responsible for administering the manner of an inmate's incarceration. *Id.*

*Donahue v. St. Joseph Cnty. ex rel. Bd. of Com'rs of St. Joseph Cnty.*, 720 N.E.2d 1236, 1240 (Ind. Ct. App. 1999). Taylor's complaints about clogged vents, dirty floors and toilets, and insects concern the cleaning policies of the jail, not the state of the building. Therefore, neither the County nor the Board of Commissioners may be held liable under § 1983.

The Health Department and the Board of Health also cannot be charged with unconstitutional policies or practices that caused Taylor's injury. Taylor attempts to plead their involvement by alleging that he wrote two letters to the Fort Wayne-Allen County Health Department about the insect issue and unsanitary conditions but received no response. ECF 35 at 14, 16. This is insufficient to hold them liable under § 1983. Assuming that the Health Department or the Board of Health was empowered to inspect the jail for health violations, *see* IND. CODE § 16-20-1-21, any failure to do so does not provide a basis for § 1983 liability because Taylor has no constitutional right to an inspection. "[The constitution] limits the powers of government but does not give people legally enforceable rights to demand public services and to obtain damages or other legal relief if the government fails to provide them." *Tuffendsam v. Dearborn Cnty. Bd. of Health*, 385 F.3d 1124, 1126 (7th Cir. 2004) (citing *DeShaney v. Winnebago Cnty. Dep't of Social Services*, 489 U.S. 189 (1989)).

### C. State-Law Claims

Taylor also includes state-law tort claims against each of the defendants. He alleges that he satisfied the notice requirements in the Indiana Tort Claims Act. *See* IND. CODE § 34-13-3-6; *Poole v. Clase*, 476 N.E.2d 828 (Ind. 1985).

"To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach." *Trout v. Buie*, 653 N.E.2d 1002, 1008 (Ind. Ct. App. 1995). Taylor alleges the Sheriff breached his duty to "take care of the county jail and the prisoners there." IND. CODE § 36-2-13-5(a). This duty requires him to "exercise reasonable care to preserve his prisoners' health and safety." *Trout*, 653 N.E.2d at 1008. The Sheriff, in his official capacity, may be held liable for the negligent acts of his employees. *See Perkins v. Lawson*, 312 F.3d 872, 876 (7th Cir. 2002). Therefore, Taylor has stated a negligence claim against the Sheriff in his official capacity based on jail staff's breach of the duty to exercise reasonable care to preserve Taylor's health.

However, the Sheriff is immune under Indiana law from liability in his individual capacity. Indiana Code § 34-13-3-5 provides immunity for acts a public employee takes in the scope of employment. Maintaining the jail is within the scope of the Sheriff's employment.

Taylor does not state any state-law claims against the remaining defendants. As for the Board of Commissioners and Allen County, they do not owe him a duty. As discussed above, "[o]nce the Commissioners establish and reasonably maintain a jail, they are not responsible for administering the manner of an inmate's incarceration." *Robins v. Harris*, 740 N.E.2d 914, 918 (Ind. Ct. App. 2000), *aff'd in part and vacated in part by Robins v. Harris*, 769 N.E.2d 586, 587 (Ind. 2002) ("[W]e now summarily affirm the

original and rehearing opinions of the Court of Appeals except as to the availability of consent as a defense to the claim of battery . . ..” (footnote omitted)).

As to the Health Department and Board of Health, even assuming they owed a duty to Taylor, they are immune under Indiana law. Taylor's complaint against these defendants is that they failed to enforce sanitation laws. They are entitled to immunity for loss resulting from a failure to enforce the law. Under the Indiana Tort Claims Act, a governmental entity is immune from liability "if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment." IND. CODE § 34-13-3-3(a)(8). "[W]hat was required to establish immunity was that the activity be one in which government either compels obedience to laws, rules, or regulations or sanctions or attempts to sanction violations thereof." *Davis v. Animal Control – City of Evansville*, 948 N.E.2d 1161, 1164 (Ind. 2011). Thus, any failure to enforce the sanitation laws at the jail cannot be the basis of a state-law claim.

For these reasons, the court:

(1) LIFTS the stay;

(2) GRANTS Brent Taylor leave to proceed against Sheriff David Gladieux in his official capacity for compensatory and punitive damages for implementing a policy at the Allen County Jail to not have a system of cleaning the protective custody units that resulted in skin irritation and rashes in violation of the Fourteenth Amendment;

(3) GRANTS Brent Taylor leave to proceed against Sheriff David Gladieux in his official capacity for compensatory and punitive damages for breaching the duty of care

to maintain the jail in a reasonably sanitary condition, resulting in skin irritation and rashes in violation of state law;

(4) DISMISSES all other claims;

(5) DISMISSES County of Allen, Allen County Health Department, Allen County Board of Commissioners; Fort Wayne-Allen County Board of Public Health;

(6) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sheriff David Gladieux at Allen County Jail, with a copy of this order and the complaint (ECF 34, 35), pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS Allen County Jail to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Sheriff David Gladieux to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 1, 2021.

s/William C. Lee
JUDGE WILLIAM C. LEE
UNITED STATES DISTRICT COURT