UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRENT TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> DAVID J. GLADIEUX, <br><br> Defendant. | CAUSE NO. 1:20-CV-477-TLS-SLC |

**OPINION AND ORDER**

Brent Taylor, a prisoner without a lawyer, filed a Motion for Relief from a Judgment or Order [ECF No. 114], requesting reconsideration of the Court's May 12, 2022 Opinion and Order [ECF No. 110] that denied him leave to file an amended complaint. He is proceeding in this case "against Sheriff David Gladieux in his official capacity for compensatory and punitive damages for implementing a policy at the Allen County Jail to not have a system of cleaning the protective custody units that resulted in skin irritation and rashes in violation of the Fourteenth Amendment;" and "against Sheriff David Gladieux in his official capacity for compensatory and punitive damages for breaching the duty of care to maintain the jail in a reasonably sanitary condition, resulting in skin irritation and rashes in violation of state law." Sept. 1, 2021 Op. & Order 9–10, ECF No. 54.

Taylor submitted a proposed amended complaint, seeking to add individual capacity claims against the Sheriff and others and to add claims against Allen County Commissioner Richard Beck. *See* ECF No. 95. The Court denied the motion, concluding that the proposed amended complaint did not state any individual capacity claims, and declining to exercise supplemental jurisdiction over a potential state-law negligence claim against Commissioner

Beck. *See* May 12, 2022 Op. & Order, ECF 110. Now, Taylor moves for reconsideration, and the Court will address each of his arguments in turn.

## DISCUSSION

Reconsideration of an interlocutory order "is a matter of a district court's inherent power" and is "committed to a court's sound discretion." *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008) (citations omitted). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (citation omitted); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (explaining that a motion to reconsider is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare" (citation omitted)).

**A.    Individual Capacity Claim against Sheriff Gladieux**

Taylor first takes issue with the denial of an individual capacity claim against Sheriff Gladieux. The Court noted that a necessary component of a 42 U.S.C. § 1983 claim is a defendant's personal involvement in the alleged constitutional violation. May 12, 2022 Op. & Order 3. Quoting a passage from the initial screening order, the Court went on to explain:

> But in order for a defendant to be held individually liable under § 1983, that defendant must have "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). The complaint contains no indication that Gladieux was aware of the conditions in the holding cell. Taylor alleges that he "asked several correctional officers for cleaning supplies" and he used the intercom in his cell to ask "central

> command for cleaning supplies." ECF 35 at 9–10. None of this provides a basis to infer that Gladieux was personally involved in the conditions of the cell or in the denial of cleaning supplies. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Therefore, the complaint does not state a claim against Gladieux in his individual capacity for the condition of the holding cell.

*Id.* (quoting Sept. 1, 2021 Op. & Order 2). Looking at the proposed amended complaint, Taylor alleged Gladieux's personal involvement in the conditions of the Protective Custody Unit only on the basis of grievances and letters, which the Court concluded was insufficient to show his personal involvement. The Court explained that "Taylor forgoes identifying the individual officers who were supposed to provide him cleaning supplies and instead blames the higher-ups for not ensuring custody staff were doing their job." *Id.*

Taylor argues that the Court's opinion implied that the proposed amended complaint concerned the conditions in the holding cell, when in fact he was seeking to hold Sheriff Gladieux responsible for the conditions in the Protective Custody Unit. Pl. Mot. 1, ECF No. 114. However, the Court was aware of the claims Taylor was asserting. The quoted passage was used to demonstrate that Taylor was advised of the need for personal involvement—a legal requirement that applies to any § 1983 individual capacity claim, regardless of the specific subject matter. Taylor's argument is not a basis to reconsider the ruling.

Turning to the merits of the asserted individual capacity claim, the Court sees no reason to reconsider its ruling that the letters and grievances Taylor sent to the Sheriff do not establish his personal involvement in the unsanitary conditions in the Protective Custody Units. The Seventh Circuit has said that "inaction following receipt of a complaint about someone else's conduct is not a source of liability." *Estate of Miller v. Marberry*, 847 F.3d 425, 428–29 (7th Cir. 2017). It is not enough to allege that the defendant "brushed off his complaints, leaving them to

3

be handled through the chain of command." *Id.* at 429. Taylor chose not to sue the actual prison guards who were responsible for providing him with cleaning supplies. Instead, he seeks to sue the Sheriff for brushing off his complaints, which will not support liability under § 1983.

**B.    Federal Claim against Commissioner Beck**

When analyzing the proposed amended complaint, the Court declined to exercise supplemental jurisdiction over a potential state-law claim against Commissioner Beck. Taylor argues that the Court overlooked that he also asserted a § 1983 claim against the Commissioner, contending that the plumbing issues he faced violated the Fourteenth Amendment. Granted, Taylor makes passing references to the Fourteenth Amendment in the proposed amended complaint. But the factual allegations focused more on a state-law claim than a potential federal claim. However, considering the factual allegations in light of a potential federal claim does not help Taylor because the proposed amended complaint does not state a constitutional claim against the Commissioner in either his individual or official capacity.

The amended complaint does not state an individual capacity claim against Commissioner Beck because of a lack of personal involvement. Taylor asserts the requirement of personal involvement is satisfied based on certified letters he sent the Commissioner about the problems with the plumbing in his cell. But as discussed above, letters are not enough.

As for a potential official capacity claim, a suit against the Commissioner is the same as one against the County. *See McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent." (quotation marks omitted)). To assert a § 1983 claim against a county, Taylor must satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). There are several ways a plaintiff may prove *Monell* liability:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation[] [was] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made . . . by those whose edicts or acts may fairly be said to represent official policy. . . . Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (citations and quotation marks omitted). Here, Taylor does not plausibly allege the County can be held responsible for any harm caused to him by faulty plumbing.

Taylor first complains that he "had to go months at a time without water in [his] cell or living area due to faulty pipes [and] plumbing in the jail." ECF No. 95-1 at 6. This lack of access to running water, without more, does not state a claim. "[A]n inmate is not entitled to have running water in his cell." *Scruggs v. SinClair*, No. 3:16-CV-39, 2016 WL 344534, at *2 (N.D. Ind. Jan. 27, 2016). While jail officials must ensure that inmates have access to sufficient water, *see Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (noting a prisoner's right to "the minimal amount of water needed for necessary activities of life"), it need not be on demand in an inmate's cell or living area.

Taylor also alleges that the faulty plumbing caused problems with the toilet in the two cells he occupied while in the Protective Custody Unit. When he was in L-Block, he alleges he had to "share a one person cell with three other inmates in a cell where the toilet did not flush due to faulty plumbing and inadequate pipes, resulting in bodily waste being piled on the toilet and at times to overflow on the floor where at times [he] had to sleep." ECF No. 95-1 at 6. He further alleges "the toilet would often times not flush and/or overflow. This would cause [him] to be submerged in waste." *Id.* at 9. And, finally, he states that "[he] had to go weeks without

5

access to a toilet. During the weeks of not having access to a toilet that flushed, [his] two other cell mates would be forced to use the non-functioning toilet. This would cause at times an overflow that spilled on the floor, making contact with [his] body." *Id.* at 9–10. There was a working toilet in the living area (which Taylor alleges was covered in feces and urine), but he complains that two unidentified correctional officers refused to let them out of their cell to use it. *Id.* at 10. Then, when Taylor was moved to M-Block, he alleges "the hot water did not work in [his] cell and the toilet would often time not flush or flood." *Id.* at 11.

These allegations do not meet the standard for *Monell* liability against the County. The County's duty extends to maintaining the plumbing, but not to cleaning up from any individual plumbing failure. "[T]he statutory duties of a county and a sheriff, respectively, are set forth as follows: 'The executive shall establish and maintain a . . . county jail . . . .' 'The sheriff shall . . . take care of the county jail and the prisoners there.'" *Donahue v. St. Joseph Cty. ex rel. Bd. of Comm'rs*, 720 N.E.2d 1236, 1240 (Ind. Ct. App. 1999) (quoting Ind. Code §§ 36-2-2-24, 36-2-13-5(a)(7)). "[A] county's duty to 'maintain' its jail is a duty to keep the jail open for use and in good repair," and the "statute does not impose a duty upon a county to administer its jail." *Id.* This is not to say that Taylor's exposure to human waste is to be condoned. *See Cobian v. McLaughlin*, 804 F. App'x 398, 399 (7th Cir. 2020) ("Exposure to human feces may violate the Eighth Amendment where no cleaning supplies and water are made available to manage the problem."). Rather, it is simply not relevant to this claim because Taylor has not alleged facts showing the County has a policy or custom of not keeping the plumbing in good repair.

C.     **Jail Commander David Butler**

Taylor argues that a claim should proceed against Jail Commander David Butler based on his job duties, which include ensuring that the safety and sanitation at the jail are in accordance

with accreditation standards, overseeing personnel and evaluating employee performance, and developing training programs for staff. Pl. Mot. 3. Taylor argues that he is not suing Butler on a theory of respondeat superior; instead, he contends Butler was aware of the unsanitary conditions at the jail and turned a blind eye to the conditions. *Id.* at 4. However, the only allegation in the proposed amended complaint related to Butler is that Taylor sent him grievances about the jail conditions. ECF No. 95-1 at 7. As explained above, that is insufficient.

### D.  Assistant Jail Commander Mark Sickafoose

Finally, Taylor argues the proposed amended complaint states a claim against Assistant Jail Commander Mark Sickafoose. However, Sickafoose was not listed as one of the nine defendants named in the proposed amended complaint. ECF No. 95-1 at 1, 5. Therefore, the Court did not err by not addressing potential claims against him.

## CONCLUSION

For the reasons stated above, the Court DENIES the Motion for Relief from a Judgment or Order [ECF No. 114].

SO ORDERED on June 30, 2022.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT